**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re Application of, | |
| | |
| FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC, Corbin ERISA Opportunity Fund, Ltd. and Harspring Capital, LP, | C.A. No. |
| | |
| Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | |

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO
<u>CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING</u>**

OF COUNSEL:

Damian Vallejo*
Catherine Zimmermann*
Esther Romay Jove*
**Dunning Rievman & MacDonald LLP**
1350 Broadway, Suite 2220
New York, New York 10018
(646) 680-9236
dvallejo@drmlaw.com
czimmermann@drmlaw.com
eromay@drmlaw.com

Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Petitioners*

*Pro hac vice* applications forthcoming

February 27, 2025

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 3

    A.    Parties to the Appraisal Proceedings and the Merger ............................................. 3

    B.    Bermuda Appraisal Proceedings ................................................................................ 5

    C.    Sixth Street and The Discovery Sought ..................................................................... 5

ARGUMENT ........................................................................................................................... 9

I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS ...... 9

    A.    Sixth Street Is Found in This District ....................................................................... 9

    B.    The Discovery Is "For Use" in a Foreign Proceeding ........................................... 10

    C.    Petitioners Are "Interested Persons" ....................................................................... 11

II.    THE *INTEL* FACTORS WEIGH STRONGLY IN FAVOR OF DISCOVERY ............. 11

    A.    *INTEL I*:  Sixth Street Is Not a Party to the Appraisal Proceedings .................... 11

    B.    *INTEL II*: The Bermuda Court Is Receptive to the Requested Discovery ........... 12

    C.    *INTEL III*: Petitioners Are Not Circumventing Foreing Proof-Gathering Restrictions ......................................................................................... 13

    D.    *INTEL IV*: The Subpoena Is Not Unduly Burdensome ......................................... 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ....... 11

*In re Alpine Partners (BVI) L.P.*, No. Civ. 24-337 (KSH) (JSA), 2024 WL 4336824 (D.N.J. Sept. 27, 2024) ................................................................................................................. 14

*In re Application of Hill*, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) ....................................... 14

*In re Application of Mun*, No. 22-mc-243-MN-JLH, 2023 WL 7074016 (D. Del. Oct. 26, 2023) ................................................................................................................... 14

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998) ..................................................................... 2, 9, 16

*In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690 (3d Cir. 2018) ................ 10, 18

*In Re Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011). ................................................................... 13

*In re EWE Gasspeicher GmbH*, 612 F. Supp. 3d 402 (D. Del. 2020) ........................................... 9

*In re Ex Parte Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings.*, No. 20-mc-334-MN, 2021 WL 1063390 (D. Del. Mar. 19, 2021) ........................................................................................... 15

*In re Ex Parte Application of Eni S.p.A.*, C.A. No. 20-mc-334-MN, 2021 WL 1063390 (D. Del. Mar. 19, 2021) ..................................................................................................... 11, 15

*In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83 (3d Cir. 2016) ........................... 16

*In re Liverpool Limited Partnership*, No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021) .............................................................................................................................. 10

*In re Oasis Core Inv. Fund Ltd.*, No. 23-MC-402 (SHS), 2024 WL 472984 (S.D.N.Y. Feb. 7, 2024) ............................................................................................................................. 14

*In re Selman*, C.A. No. 23-895-CJB, 2024 WL 1092025 (D. Del. Mar. 13, 2024) ..................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..................................... passim

*Kulzer v. Esschem, Inc.*, 390 F. App'x. 88 (3d Cir. 2010) ........................................... 12

*Matter of Degens*, No. 1:20-MC-237 (JGK) (RWL), 2020 WL 4252725 (S.D.N.Y. Jul. 24, 2020) ................................................................................................................. 17

*Pinchuk v. Chemstar Products LLC*, No. 13–mc–306–RGA, 2014 WL 2990416 (D. Del. June 26, 2014) ................................................................................................ 10

*Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12–mc–193–RGA, 2013 WL 646236 (D. Del. Feb. 21, 2013) ................................................................................ 13

**Statutes**

28 U.S.C. § 1782 ........................................................................................ passim

FRCP Rule 30 .............................................................................................. 15

FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC and Corbin ERISA Opportunity Fund, Ltd. ("**FourWorld**") and Harspring Capital, LP ("**Harspring**" and, together with FourWorld, "**Petitioners**") respectfully submit this opening brief in support of an application pursuant to 28 U.S.C. § 1782 (the "**Application**") seeking an order: (a) granting Petitioners leave to serve subpoenas on Sixth Street Partners, LLC ("**Sixth Street**" or the "**Buyer**"); (b) directing Sixth Street to produce the materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Sixth Street to provide deposition testimony in compliance with the Subpoena on a mutually agreeable date within a reasonable time after Sixth Street' confirmation of its final production of documents in response to the Subpoena issued against it; and (d) granting any and all other relief the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take discovery from persons and entities found in this District for use in shareholder appraisal rights litigation (the "**Appraisal Proceedings**") pending in the Supreme Court of Bermuda (the "**Bermuda Court**"). In the Appraisal Proceedings, Petitioners seek a determination of the fair value of their shares in Enstar Group Limited ("**Enstar**" or the "**Company**"), a Bermuda company which, after its purchase by Sixth Street through the execution of a series of mergers further detailed below, will become a wholly owned subsidiary of Elk Bidco Limited (the "**Parent**") and will be delisted from the NASDAQ Stock Market (the "**Merger**"). Through this Application, Petitioners seek discovery relating to the core issues in the Appraisal Proceedings: the fair value of the Company and the process that led to the Merger price.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before foreign tribunals. Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG, 146 F.3d 188, 195 (3d Cir. 1998)*.

As described below, Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Sixth Street "resides or is found" in this District because it is organized under the laws of Delaware; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceedings; and (iii) Petitioners, plaintiffs in the Appraisal Proceedings, meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioner's Application. *See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004)*.

The first *Intel* factor weighs in favor of discovery because Petitioners seek discovery from "nonparticipants" in the Appraisal Proceedings. *Id.* As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent §1782(a) aid." *Id.* Sixth Street is not a named party in the Appraisal Proceedings or otherwise subject to the jurisdiction of the Bermuda Court.

Under the second *Intel* factor, which considers the character of the foreign proceeding and receptivity of the foreign tribunal, there is no indication suggesting that the Bermuda Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, as established in the declaration of Petitioners' Bermuda counsel, Delroy B. Duncan KC, Petitioners will have the right to present

evidence gathered under Section 1782 of the Bermuda Court in support of their claims.  Several U.S. courts have granted Section 1782 applications for the production of documents in aid of foreign appraisal proceedings, including in Bermuda courts.

Under the third *Intel* factor, the Application is not concealing any improper attempt to circumvent foreign discovery restrictions on proof gathering. *See Intel*, 542 U.S. at 265.  The requested discovery does not implicate any privilege or special protection that would make it improper under Bermuda law.

Under the fourth *Intel* factor, the proposed discovery is not unduly burdensome. *Id.*  To the contrary, the proposed Subpoena is tailored to seek evidence addressing the fair value of the Petitioners' shares in the Company and the process that the Buyer and the Company undertook to negotiate and approve the Merger.  As explained in the accompanying declaration of Petitioner's Bermuda counsel, such evidence is directly relevant to the critical issues in the Appraisal Proceedings.

Finally, the Court should exercise its discretion to order production of any responsive discovery that Sixth Street has in its possession, custody, or control, regardless of the physical location of that evidence.  Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third party not subject to the jurisdiction of the foreign court.

## BACKGROUND

### A.    PARTIES TO THE APPRAISAL PROCEEDINGS AND THE MERGER

The Petitioners are shareholders of the Company and the only dissenting shareholders who have initiated appraisal proceedings against the Company.  FourWorld, a series of investment funds managed by SEC registered adviser FourWorld Capital, LLC, holds 208,100 ordinary shares

in the Company. *See* Declaration of Delroy B. Duncan KC ("**Duncan Decl.**"), Ex. 1, ¶ 1. Harspring, an investment fund managed by New York-based Harspring Capital Management, LLC, holds 62,000 ordinary shares in the Company. *Id.*, Ex. 2, ¶ 1.1.

Enstar is an exempted company limited by shares under the laws of Bermuda. *Id.* at 13. Founded in 1993, Enstar is a leading global (re)insurance group that offers innovative capital release solutions through its network of group companies in Bermuda, the US, the UK, Continental Europe, and Australia. *Id.* Its core focus is acquiring and managing (re)insurance companies and portfolios of (re)insurance businesses in run-off. *Id.* Since 2007, Enstar's shares have been, and still are, listed on the NASDAQ under the symbol "ESGR." *Id.*

On October 11, 2024, the Company filed a proxy statement with the SEC (the "**Proxy Statement**") which included the Agreement and Plan of Merger, dated as of July 29, 2024, by and among the Parent, Elk Merger Sub Limited, Enstar, Deer Ltd. and Deer Merger Sub Ltd., pursuant to which the Company, certain wholly owned subsidiaries of the Company and a wholly owned subsidiary of the Parent intend to effect a series of mergers, with the Company surviving such mergers as a wholly owned subsidiary of Parent ("**Merger Agreement**"). Declaration of Damián Vallejo ("**Vallejo Decl.**"), Ex. 2. As the buyer, Sixth Street provided equity finance to its affiliates Elk Merger Sub Limited and Parent in the amount of $3.512 billion for executing the Merger. *Id.,* p. 17 (Equity Financing).

Once the three mergers contemplated by the Merger Agreement are finalized, each holder of Enstar's ordinary shares (with value $1.00 per share) will be entitled to receive a total of $338 in cash per share, without interest. *Id.*, pp. 25 – 26.

Following the proxy statement filing, a special general meeting was held with certain Enstar shareholders to vote to approve the merger. *Id.*, Ex. 5.

{02095224;v1 }                                              4

## B.    BERMUDA APPRAISAL PROCEEDINGS

On November 8, 2024, Petitioners exercised their appraisal rights and, by filing Originating Summonses asking the Bermuda court to determine the fair value of its shares under Section 106(6) of the Bermuda Companies Act, initiated proceedings in Bermuda. Duncan Decl., ¶ 20.   As described in the accompanying declaration of Delroy B. Duncan KC, Petitioners will have the opportunity to present documentary evidence, witness testimony, and legal arguments to the Bermuda Court.   The Bermuda Court will be charged with determining the fair value of the dissenting shareholders' shares. *Id.*, ¶¶ 29 – 30.   This process involves examining both the valuation of the Company and the fairness of the process that led to the approval of the Merger. *Id.*, ¶¶ 33 – 35.

## C.    SIXTH STREET AND THE DISCOVERY SOUGHT

Through this Application, Petitioners seek discovery from Sixth Street, the Buyer in the Merger, on issues relevant to the Appraisal Proceedings, including: (a) the fairness of the Merger price, including negotiations between Sixth Street, as the buyer, and the Company; (b) the process that the Buyer undertook to formulate the Merger price; (c) any alternative transactions to the Merger that were considered; (d) the potential investments by third parties in the Merger, including by potential equity- or debt-financing source; and (e) documents pertaining to the Company's valuation, including any material non-public information, valuations, models, and any forecasts of the Company's future performance ("**Requested Discovery**").   The Requested Discovery will significantly assist the Bermuda Court in evaluating the Merger and its negotiation process. *See* Duncan Decl., ¶ 50.   It will also assist the Bermuda Court in determining the fair value of Petitioners' shares in the Company. *Id.*

Sixth Street is a global investment firm with over $80 billion in assets under management and committed capital organized under the laws of Delaware. Vallejo Decl., Ex. 3, p. 4.

Starting in April 2022, Sixth Street received proprietary information and conducted extensive due diligence on the Company. *Id.*, Ex. 2, p. 43 ("[a]s part of this process, the Company from February to April 2022 entered into mutual nondisclosure agreements with four counterparties, including Sixth Street, and provided each of such parties with certain non-public information regarding the Company and held discussions with representatives of each of such parties regarding the Company's business."); *Id.*, p. 44 ("[o]n August 10, 2023, the Company and Sixth Street entered into a new mutual nondisclosure agreement and, thereafter, the Company provided Sixth Street certain non-public information regarding the Company and held discussions with representatives of Sixth Street regarding the Company's business to allow Sixth Street to consider an investment in the Company and to undertake due diligence in connection therewith."); *Id.*, p. 45 ("[f]ollowing those initial discussions, the Company provided Sixth Street and its representatives with limited access to preliminary diligence materials."); *Id.*, p. 49 ("[o]n April 12, 2024, Sixth Street and its representatives were provided with access to an electronic data room containing additional non-public information of the Company."); *Id.*, p. 51 ("[o]n or about May 10, 2024, Sixth Street and its advisors completed their due diligence review of the Company.").

As the buyer, Sixt Street was a key participant in the formulation and negotiation of the Merger, the Merger Agreement and the price to be paid per each of Enstar's share.  Sixth Street representatives met with Company management to discuss Enstar's business and the insurance industry. *Id.*, p. 45 ("[o]n March 6, 2024, Mr. Silvester met with representatives of Sixth Street, at which they discussed the Company's business generally, the insurance industry, and Sixth Street's experience and impressions in its first months as a shareholder of the Company and as having an

observer to the Board's meetings."). Both parties negotiated the price per to be paid in the Merger per each Enstar ordinary share, exchanging several offers and counteroffers. *Id*., pp. 45 – 46 ("[t]he March 24 Letter proposed that Sixth Street would acquire all of the outstanding Enstar Ordinary Shares, other than the Enstar Ordinary Shares already held by Sixth Street and its affiliates, for $327 per Enstar Ordinary Share"); *Id*., p. 48 ("[a]fter discussion and deliberation, the Board instructed Mr. Campbell and representatives of Goldman Sachs to inform Sixth Street, which Mr. Campbell and the Goldman Sachs representatives did promptly following the information session, that Sixth Street needed to increase its offer price to engage in further discussions with the Board and that without the prior approval of the Board, Sixth Street was not permitted to discuss any terms of any potential transaction with Company management."); *Id*. ("[t]he April 7 Letter proposed that Sixth Street would acquire all of the outstanding Enstar Ordinary Shares, other than the Enstar Ordinary Shares already held by Sixth Street and its affiliates, for a total diluted equity valuation of $5,100 million, which implied a per share price of $336.62 per Enstar Ordinary Share on an as-adjusted fully diluted basis, with the Company's preferred shares remaining outstanding"); *Id*. ("the Board instructed representatives of Goldman Sachs to, as a negotiating tactic to try to maximize shareholder value, respond to Sixth Street with a counteroffer at a price of $343 per Enstar Ordinary Share"); *Id*., pp. 48 – 49 ("[t]he April 9 Letter proposed that Sixth Street would acquire all of the outstanding Enstar Ordinary Shares, other than the Enstar Ordinary Shares already held by Sixth Street and its affiliates, for $338.00 per Enstar Ordinary Share (which was also $338.00 per Enstar Ordinary Share on an as-adjusted fully diluted basis), with the Company's preferred shares remaining outstanding.").

Throughout the negotiations, Sixth Street reached out and had several discussions with multiple potential co-investors to raise additional equity commitments to finance the transaction.

*See, e.g.*, *Id.*, p. 46 ("[t]he March 24 Letter also indicated that Sixth Street intended to finance any potential transaction through a combination of cash from one or more of Sixth Street's investment vehicles, equity commitments from co-investors and third-party bank financing."); *Id.*, p. 50 ("[r]epresentatives of Goldman Sachs provided the Board with an update on the status of negotiations with Sixth Street regarding a potential transaction, noting that Sixth Street had informed representatives of Goldman Sachs that Sixth Street had begun discussions with 13 potential equity financing sources, which were approved by the Company, and expected to provide the Board updates on such discussions on a continuing basis."); *Id.*, p. 51 ("[r]epresentatives of Goldman Sachs provided the Board an update on the status of discussions with Sixth Street, including Sixth Street's equity financing and debt financing efforts in respect of the potential transaction"); *Id.*, pp. 51 – 52 ("[h]aving contacted and engaged with more than 30 approved potential equity financing sources, Sixth Street believed that it would be able to provide the Company with a more fulsome update, and potentially with firm commitments, in the upcoming weeks.").

Further, Sixth Street promoted and negotiated the execution of the rollover and support agreements between Sixth Street and certain shareholders (*i.e.*, Dominic Silvester ("**Mr. Silvester**"), the Chief Executive Officer of the Company; and certain entities and persons associated with J.C. Flowers & Co. ("J.C. Flowers" and, together with Mr. Silvester, the "**Rollover Participants**" and, when referring to the agreements, the "Rollover and Support Agreements")), pursuant to which the Rollover Participants agreed, among other things and with respect to the number of Enstar ordinary shares beneficially owned by them, to vote or execute consents in favor of the Merger and to reinvest certain of those shares into a non-voting ownership interest in a parent company of Parent. *Id.*, p. 148.

**ARGUMENT**

28 U.S.C. § 1782 permits United States District Courts to grant discovery for use in a pending foreign proceeding. *Intel*, 542 U.S. at 246. Section 1782 sets forth three mandatory requirements: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding before a foreign or international tribunal'; and (3) the application is made by an 'interested person.'" *In re EWE Gasspeicher GmbH*, 612 F. Supp. 3d 402, 404 (D. Del. 2020) (citing to *Bayer AG*, 146 F.3d at 193).

If these statutory requirements are met, the court then considers four discretionary *Intel* factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. When applying these factors, the Court should consider Section 1782's "'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).

## I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS

### A.    SIXTH STREET IS FOUND IN THIS DISTRICT

Section 1782's required that a person or entity "reside[]" or be "found" in a district is satisfied when an entity is incorporated in the district. *See In re Liverpool Limited Partnership*, No.

21-MC-86-CFC, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021) ("BAC is a Delaware corporation and therefore it resides and is found in this District.  Accordingly, the first condition of § 1782 is satisfied here."); *see* also *Pinchuk v. Chemstar Products LLC*, No. 13–mc–306–RGA, 2014 WL 2990416, at *2 (D. Del. June 26, 2014)* ("Respondents are Delaware limited liability companies and reside in the District of Delaware for the purposes of § 1782.").  Sixth Street is organized under the laws of Delaware and thus is "found" in this District. *Id.*, Ex. 6.

### B.    THE DISCOVERY IS "FOR USE" IN A FOREIGN PROCEEDING

To demonstrate that the material at issue is "for use" in a foreign proceeding, Petitioners must meet a "low threshold" by showing that "the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *In re Selman*, C.A. No. 23-895-CJB, 2024 WL 1092025, at *3 (D. Del. Mar. 13, 2024)* (quoting *In re Ex Parte Application of Eni S.p.A.*, C.A. No. 20-mc-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021)*).  "The key question ... is not simply whether the information sought is relevant, but whether the [petitioner] will actually be able to use the information in the [foreign] proceeding." *Id*. (quoting *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015)).

As explained in the declaration from Petitioners' Bermuda counsel, the Bermuda Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained through Section 1782 and otherwise admissible.    In the Appraisal Proceedings, the Bermuda Court will consider all facts and matters that may have a bearing on the determination of fair value.   As explained by Petitioners' Bermuda counsel, particularly when the Company points to the Merger price as an indicator of fair value, the Court's inquiry often turns to a consideration of whether the process that led to that price was a fair process.  Duncan Decl., ¶¶ 33 – 35.

The Requested Discovery from Sixth Street, as the buyer in the Merger, targets key information about both the Merger price and the process through which the Merger price was considered, negotiated, and ultimately agreed upon.    Accordingly, the Requested Discovery will be of "use" to the Bermuda Court given its relevance in determining the fair value of Petitioners' (former, once the Merger closes) shareholdings.

### C.    PETITIONERS ARE "INTERESTED PERSONS"

"No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; and *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) ("[a]n interested person includes a party to the foreign litigation, whether directly or indirectly.").  Petitioners are a party to the Appraisal Proceedings and are thus "interested persons" under Section 1782.

## II.    THE *INTEL* FACTORS WEIGH STRONGLY IN FAVOR OF DISCOVERY

### A.    *INTEL I*:  SIXTH STREET IS NOT A PARTY TO THE APPRAISAL PROCEEDINGS

The first *Intel* factor asks whether the party from whom discovery is sought is a participant in the foreign proceeding.  This is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.  Here, Sixth Street is not a participant in the Appraisal Proceedings and is not subject to the jurisdiction of the Bermuda Court.

Accordingly, the first *Intel* factor weighs in favor of granting the Application.

**B.**   ***INTEL II*: The Bermuda Court Is Receptive to the Requested Discovery**

Under the second *Intel* factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  The relevant inquiry asks "whether the foreign court would consider the evidence revealed from a § 1782 order." *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12–mc–193–RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013).  There is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782. *See In Re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011).

The Bermuda Court will consider any evidence that has a bearing on determining the fair value of a company's shares.  *See* Duncan Decl., ¶¶ 29 – 37.   Moreover, as set forth in the Duncan KC Declaration, Bermuda courts have admitted evidence obtained through Section 1782.  *See Id.*, ¶ 44.  Further, several US courts have recognized that Bermuda courts are receptive to evidence obtained through Section 1782.  *See, e.g., In re Application of Mun*, No. 22-mc-243-MN-JLH, 2023 WL 7074016, at *4 (D. Del. Oct. 26, 2023) ("[w]hile I have doubts that the Bermuda Court would authorize or approve of the discovery requested by the Application, I can't say on this record that the Bermuda Court would be unreceptive to judicial assistance.  Accordingly, I conclude that this factor favors Petitioners."); *In re Alpine Partners (BVI) L.P.*, No. Civ. 24-337 (KSH) (JSA), 2024 WL 4336824, at *6 (D.N.J. Sept. 27, 2024) ("[t]his Court's review of the relevant case law confirms that courts in Bermuda are receptive to Section 1782 discovery."); *In re Oasis Core Inv. Fund Ltd.*, No. 23-MC-402 (SHS), 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024) ("[o]n the

second factor, Robinson and Wasty both agree that Bermuda courts are receptive to evidence obtained pursuant to Section 1782"); *In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash Section 1782 subpoena for discovery to be used in Bermudan and Hong Kong liquidation proceedings).

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

## C.    *INTEL III*: PETITIONERS ARE NOT CIRCUMVENTING FOREING PROOF-GATHERING RESTRICTIONS

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.    In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").    This factor counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (emphasis in original), or "when the foreign tribunal has already rejected requests for the same documents." *In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390 at *4 (D. Del. Mar. 19, 2021); *Selman*, 2024 WL 1092025 at *8 (finding the third Intel factor favored the petitioners where it was "not a case where the foreign court has some type of clear rule barring Petitioners from obtaining the type of discovery at issue" nor "a scenario where a foreign court has already determined that the type of evidence at issue is irrelevant or otherwise

inadmissible.").  No such circumstance is present here. ▯Therefore, the third *Intel* factor weighs in favor of granting the Application. ▯

### D.    *INTEL IV*: THE SUBPOENA IS NOT UNDULY BURDENSOME

The Requested Discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45." *In re Global Energy Horizons Corp.*, 647 F. App'x. 83, 85-86 (3d Cir. 2016); *see also Bayer AG*, 146 F.3d at 195 ("[t]he reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").    The proposed Subpoena seeks documents and information directly relevant to the central issues in the Appraisal Proceedings. *See* Background Section C, *supra*.  In addition, the proposed Subpoena is temporally limited to the period in which the Company began reviewing and considering strategic opportunities ("including a sale of the Company") and the Merger was being contemplated, negotiated, and executed. *See* Vallejo Decl., Ex. 2, p. 43.

Further, to the extent any of the Requested Discovery is located outside of the United States, that does not create any undue burden.   The documents sought will principally be in electronic form, in English, and likely are accessible from the United States in any event. *See Matter of Degens*, No. 1:20-MC-237 (JGK) (RWL), 2020 WL 4252725, at *5 (S.D.N.Y. Jul. 24, 2020) ("[m]ost if not all the records sought should be available electronically and therefore of little burden to access and produce.   Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case.").

In addition, district courts have typically been "generous" in granting Rule 30(b)(6) depositions in Section 1782, even in cases with "tight schedule[s]" and other potential difficulties.

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 15-mc-417 (LAK), 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable").   Here, Rule 30(b)(6) depositions of Sixth Street are appropriate and will significantly aid the Bermuda Court in understanding the negotiation and valuation record in a complex, multi-billion dollar transaction.

Petitioners are also willing to meet and confer with Sixth Street to address any scope or burden concerns.   Should the parties be unable to reach an agreement over any scope or burden concerns, the parties can present those disputes to the Court.   If the Court finds merit to such objections, "[i]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" and precluding any discovery into those issues directly probative of the matters in the Appraisal Proceedings.   *Biomet*, 742 F. App'x at 699   (citing *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995)).

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant their Application.

Dated:    [*]
          February 27, 2025


*Of Counsel*                                    ASHBY & GEDDES

Damian Vallejo*                                 */s/ Andrew C. Mayo*
Catherine Zimmermann*
Esther Romay Jove*                              _____
**Dunning Rievman & MacDonald LLP**             Andrew C. Mayo (#5207)
1350 Broadway, Suite 2220                       500 Delaware Avenue, 8th Floor
New York, New York 10018                        P.O. Box 1150
(646) 680-9236                                  Wilmington, DE 19899
dvallejo@drmlaw.com                             (302) 654-1888
czimmermann@drmlaw.com                          amayo@ashbygeddes.com
eromay@drmlaw.com

                                                *Attorneys for Petitioners*
*Attorneys for Petitioners*

*\*Pro hac vice* applications forthcoming